NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FELECIA M. BRISTOL,**

    **Plaintiff,**

**-vs-**                    **Case No.6:12-cv-956-Orl-31KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Felecia M. Bristol seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 11, 12, and the parties' memoranda, Doc. Nos. 14, 15. This matter has been referred to the undersigned for issuance of a Report and Recommendation.

## PROCEDURAL HISTORY.

In 2008, Bristol filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401 *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the "Act"). She alleged that she became disabled on July 12, 2007. R. 150, 153.

NOT FOR PUBLICATION

After her applications were denied initially and on reconsideration, an administrative law judge ("ALJ") held a hearing at Bristol's request. Bristol, represented by an attorney, and a vocational expert ("VE") testified at the hearing. R. 39-75.

After considering the testimony and the medical evidence presented, the ALJ determined that Bristol was insured under OASDI through December 31, 2011. R. 23. The ALJ found that Bristol had not engaged in substantial gainful activity since July 12, 2007, the alleged disability onset date. *Id.*

The ALJ concluded that Bristol had morbid obesity, sleep apnea and borderline intellectual functioning. R. 23. The ALJ found that Bristol's condition did not meet or equal any listed impairment. R. 24. The ALJ concluded that Bristol's mental impairment would result in mild limitations in activities of daily living, mild limitations in social functioning and moderate limitations in concentration, persistence or pace with no repeated episodes of decompensation. R. 25-26. The ALJ gave great weight to the opinion of Catherina Eeltink, Ph.D., a reviewing psychologist, who opined that Bristol would be able to complete simple tasks on a continuing basis. R. 30.

The ALJ found that Bristol had the residual functional capacity ("RFC") to do the following:

> [P]erform light work . . . . except that she can sit for a total of four hours out of an eight-hour workday and stand for a total of four hours in an eight-hour workday; and, she is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and she should avoid concentrated exposure to fumes, dusts, odors, gases and poor ventilation. In addition, she is capable of understanding, following and completing simple, routine, repetitive tasks.

R. 26. In making this assessment, the ALJ gave significant weight to the opinions of two reviewing physicians, Dr. Eeltink and Robert H. Kelly, D.O., and some weight to the opinion of Alex C. Perdomo, M.D., an examining physician. R. 30. The ALJ also found that Bristol's testimony was not credible to the extent that it was inconsistent with the RFC finding. R. 27.

The ALJ concluded that Bristol could not return to her past relevant work. R. 31. After considering testimony from a VE, the ALJ found that there was work available in the national economy that Bristol could perform. R. 32. Therefore, the ALJ concluded that Bristol was not disabled. R. 33.

Bristol sought review of the ALJ's decision by the Appeals Council. R. 15. On April 20, 2012, the Appeals Council issued a decision finding no basis to change the ALJ's decision. R. 1-3.

Bristol seeks review of the Commisioner's decision by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Bristol having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (citations omitted), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

NOT FOR PUBLICATION

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are adequately stated in the parties' memoranda and in the ALJ's decision. Accordingly, I will only summarize facts necessary to address the issues raised in order to protect Bristol's privacy to the extent possible.

Bristol was born in 1975. At the time of the ALJ's hearing, she was 5'8" tall and weighed 344 pounds. R. 42. She completed high school in special education classes. R. 43-44, 297. She also obtained a certified nursing assistant ("CNA") certificate. R. 44.

Bristol previously worked as a CNA in various capacities. R. 45-46. She also worked as an attraction attendant and a cashier in a fast food restaurant. R. 46-47. She also worked part-time in a school lunch room. R. 48. She lost the CNA position because she fell asleep on the job. R. 63.

On March 7, 2002, Jeffrey L. Prickett, Psy.D., examined Bristol and administered psychological tests. He determined that Bristol had borderline intellectual functioning. R. 300.

On April 25, 2006, William W. Austin, Psy.D., and Kathy Lee, L.M.H.C., examined Bristol and administered psychological tests. She was observed to be easily distracted, her mood was depressed and her affect was blunted. R. 303. The examiners considered the test results to be invalid because she was distracted over her father's death. The assessment was bereavement and adjustment disorder with depressed mood. R. 304.

On May 8, 2006, Alex Perdomo, M.D., examined Bristol at the request of the SSA. She complained of shortness of breath, exertional dyspnea, occasional orthopnea and

daytime somnolence with weakness and fatigue. She had been off work since June 2004, when she quit her job as an attraction attendant. Upon examination, Dr. Perdomo found that Bristol was morbidly obese. She could walk down the hall without difficulty, and she sat comfortably during the examination. R. 311. She had mild knee crepitus with mild tenderness and some complaint of knee and lower back pain on flexion and squatting. She was able to stand on her toes and heels without problems. An x-ray showed mild osteoarthritis of the left knee. Dr. Perdomo's assessment was: morbid obesity; chronic obstructive pulmonary disease (rule out obstructive sleep apnea), poorly controlled hypertension, mild osteoarthritis of the knees, and diabetes, anemia, allergies, plantar fasciitis, and diabetes by history. R. 312. He recommended aggressive weight loss, physical therapy, and a home exercise program. He opined that Bristol could stand and walk for 4 hours and sit for 8 hours in an 8-hour day with normal breaks. She could occasionally lift and carry no more than 10 to 15 pounds. She should avoid repetitive bending, stooping, crouching, squatting, or kneeling. She should avoid exposure to extreme temperature or humidity changes. R. 312-13.

Dr. Perdomo examined Bristol again on September 27, 2007. She indicated that she had not worked for 2 months after quitting her job as a CNA due to her medical condition. She continued to be able to walk down the hallway without difficulty and sit comfortably during the examination. R. 314. Upon examination, Dr. Perdomo observed pitting edema in both legs. Bristol had full range of motion, with some pain in abduction of both shoulders and in knee flexion. She could not squat due to knee and lower back pain, but she could stand on her toes and heels without difficulty. A pulmonary function test ("PFT") revealed

that Bristol had moderate restrictive and obstructive lung disease. Dr. Perdomo again recommended aggressive weight loss and a home exercise program. He opined that Bristol could stand, walk and sit for 6 hours in an 8-hour workday with normal breaks. She could frequently lift and carry no more than 35 to 40 pounds. She should avoid repetitive bending, stooping and crouching, strenuous physical activity, dusty environments and exposure to extreme temperature or humidity changes. R. 315.

Nancy S. Hinkeldey, Ph.D., also examined Bristol in September 2007 at the request of the SSA. She noted that Bristol fell asleep multiple times during the examination. R. 430. Bristol was also uncooperative during the examination and her effort was poor. Therefore, Dr. Hinkeldey found that the test results were invalid. R. 432.

On October 1, 2007, Edmund Bartlett, Ph.D., prepared a mental RFC assessment after review of Bristol's records. R. 443-45, 457. He opined that, despite moderate limitations in understanding and memory, as well as concentration and persistence, Bristol could still do simple and basic tasks at work or at home. R. 443-45.

On July 31, 2008, David J. Fleischmann, Ph.D., examined Bristol at the request of the SSA. Bristol reported being terminated from her job as a CNA in March 2008 when she fell asleep at work. She complained of pain in her feet that limited her ability to move and stand for long periods. She reported that she was prone to falling occasionally due to leg pain. R. 334. Bristol indicated that she was active in her church, occasionally went to a movie or restaurant and attended to household chores. She would walk 5 blocks with 2 stops of 2 minutes each to catch her breath. Dr. Fleischmann observed that Bristol was talkative, expressive, attentive, cooperative and well socialized. R. 335. His diagnoses were

NOT FOR PUBLICATION

adjustment disorder with physical complaints and depressed mood, chronic, with some dependent personality traits. R. 336.

Starting in July 2008, Bristol was treated at Central Florida Pulmonary Group, P.A., by Ahmed Masood, M.D. R. 360-72. Pulmonary function tests showed some degree of reversible bronchospasm. R. 370. Dr. Masood prescribed a bronchodilator. R. 369.

On August 7, 2008, Bruce Hertz, Ph.D., completed a mental RFC assessment after review of Bristol's records. Dr. Hertz concluded that Bristol had mild limitations in activities of daily living, social functioning and concentration, persistence or pace. R. 348.

A sleep study administered in August 2008 revealed that Bristol had obstructive sleep apnea. After use of a CPAP machine, Bristol reported that her symptoms of tiredness, fatigue and sleepiness had improved and she wanted to go back to work. R. 365. A 6-minute walk protocol showed that Bristol had some exercise limitations. Dr. Masood indicated that Bristol could return to work. R. 366.

In November 2008, Dr. Eeltink prepared mental RFC assessments after review of Bristol's records. She opined that Bristol would have mild limitations in activities of daily living and social functioning and moderate limitation in concentration, persistence or pace. R. 407. Despite these limitations, Dr. Eeltink opined that Bristol "would be able to remember and carry out short and simple instructions . . . [and] may have some difficulty with more complex instructions due to reduced concentration." R. 395. She also "may have some difficulty sustaining attention and concentration for extended periods and completing a workday at a reasonable pace." *Id.* She "may have some difficulty adapting to change." *Id.*

Dr. Eeltink opined that, "Overall [Bristol] would be able to complete simple tasks on a continuing basis from a mental standpoint." *Id.*

Also in November 2008, Dr. Kelly prepared a physical RFC assessment after review of Bristol's records. He opined that Bristol could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. She could sit, stand or walk about 6 hours in an 8-hour workday. R. 412. She could only engage occasionally in postural activities. R. 413.

In November 2008, Loc Kim Le, M.D., also prepared a physical RFC assessment after review of Bristol's records. Dr. Le opined that Bristol could lift and carry up to 50 pounds occasionally and 25 pounds frequently. She could sit, stand or walk about 6 hours in a 8-hour workday. R. 462. She could only occasionally climb ladders, ropes and scaffolds, stoop and crouch. R. 463. She should avoid concentrated exposure to wetness, humidity and fumes, odors, dusts gases, poor ventilation, etc. R. 465. He found her reports of limitations to be only partially credible. R. 466.

On February 3, 2009, Bristol had a follow-up appointment with Dr. Masood. Her symptoms had improved with use of the CPAP machine, and her sleep cycle was more regularized. She reported that her symptoms of tiredness and fatigue seemed to have improved. R. 488.

Carmine Gipson, M.D., treated Bristol in 2009 for hypertension, anemia, morbid obesity, asthma and sleep apnea, among other things. R. 420. On March 4, 2010, Dr. Gipson noted that Bristol denied dyspnea and pedal edema. R. 493.

Dr. Masood examined Bristol again in January and April 2010. She reported having difficulty falling asleep but she felt refreshed upon awakening. Use of the CPAP/BIPAP

machine was controlling her sleep apnea. She denied daytime sleepiness. R. 469, 472. Ambien was prescribed for insomnia. R. 470, 473. She was advised to use bronchodilators as instructed and to avoid fumes, dust, etc. R. 471, 474.

In September 2010, Dr. Gipson diagnosed Bristol with diabetes mellitus II, among other things. R. 496.

Bristol was treated a Lakeside Behavioral Healthcare in June 2011. R. 504. She reported a short attention span, difficulty concentrating and depression. R. 505. Her condition improved with medication. R. 509.

On November 3, 2011, Bristol sought treatment from Mark Bornstein, a podiatrist, for plantar fasciitis. Dr. Bornstein prescribed orthotics. R. 541.

At the ALJ's hearing, Bristol indicated that she had sleep apnea that caused her to fall asleep at any given time despite use of a CPAP machine. R. 43, 49. Yet, she had difficulty falling asleep at night. R. 50. She denied use of Ambien. R. 63. She also complained of pain in her hands, knees, legs and feet. R. 51, 60-61, 63. Due to asthma, she had difficulty in hot, humid environments. R. 52. She also complained of headaches. R. 65.

Bristol indicated that she could walk less than 3 blocks before being short of breath. She could stand for 30 minutes to 1 hour and sit for 30 minutes before needing to change positions. R. 52-53. She was able to perform household chores for about 1 hour at time, and she could care for her personal hygiene. R. 53-54, 56. She estimated that she could lift 10 pounds before having pain in her hands, back, neck and shoulders. R. 54. She attended church and went to movies, but she often fell asleep while there. R. 55. She also went to

the library for about 2 hours every day.  R. 61.  She indicated that she had a very short attention span.  R. 57.

The ALJ asked the VE to assume a hypothetical individual of the claimant's age, education and vocational history who could lift and carry 20 pounds occasionally, 10 pounds frequently, sit for 4 hours, stand for 4 hours and walk for 4 hours in an 8-hour workday with normal breaks, unlimited pushing and pulling, all postural limits occasional, no concentrated exposure to fumes, odors, gases, dust, poor ventilation, and the ability to perform only simple, routine, repetitive tasks.  R. 70-71, 74-75.  The VE testified that this person could perform the jobs of office helper, ticket seller and parking lot attendant, which existed in substantial numbers in the national economy.  R. 70-72.   If the concentration, persistence and pace were affected occasionally due to falling asleep, the individual could not perform any jobs.  R. 73.

## ANALYSIS.

Bristol raises three assignments of error.  She contends that the ALJ erred in her interpretation of Dr. Perdomo's functional capacity assessment.  She submits that the ALJ also erred in finding her testimony to be not completely credible.  Finally, she argues that the hypothetical questions to the VE were incomplete because of the foregoing errors and because the questions did not include a finding that she would have moderate limitations in concentration, persistence or pace. These are the only issues I will address.[1]

---

[1] The parties were advised in the scheduling order that issues not raised with specificity would be waived.  Doc. No. 13 at 2.

NOT FOR PUBLICATION

*Dr. Perdomo's Opinions.*

In the opinion to which the ALJ gave some weight, (Ex. 3F), Dr. Perdomo wrote: "[Bristol] can stand and walk for four hours in an eight-hour workday with normal breaks. She can sit for eight-hours in an eight-hour workday with normal breaks." R. 312.  In a later assessment of Bristol's condition, Dr. Perdomo wrote that Bristol "can stand, walk, and sit for six hours in an eight-hour workday with normal breaks." R. 315 (emphasis added). Bristol appears to contend that the later assessment should be read to mean that Bristol could stand, walk or sit *collectively* for no more than 6 hours a day.  She contends that, if this reading of Dr. Perdomo's opinion is correct, she would not be able to perform any full-time work.  To the extent that Dr. Perdomo's later assessment is ambiguous, she argues that the ALJ had a duty to recontact Dr. Perdomo.

Reading the record as a whole, it is apparent that Dr. Perdomo knows how to assign specific limitations to functional abilities when that is his intent.  As shown in the first report of examination, dated May 8, 2006, Dr. Perdomo said specifically that Bristol could stand and walk 4 hours in an 8-hour day, and that she could sit 8 hours in an 8-hour day.  R. 312. More than a year later, on September 27, 2007, he wrote that Bristol "can stand, walk, *and* sit for six hours in an eight-hour workday with normal breaks." R. 315. The use of the conjunctive "and" supports the ALJ's reading that Dr. Perdomo found that Bristol could stand for 6 hours, walk for 6 hours and sit for 6 hours in an 8-hour workday. *See Ryals v. Comm'r of Soc. Sec.*, No. 6:12-cv-702-Orl-DAB, 2013 WL 2681990, at *3 (M.D. Fla. June 12, 2013). Moreover, this reading of Dr. Perdomo's second assessment is consistent with the opinion rendered by Dr. Kelly, which the ALJ gave significant weight.  Dr. Kelly specifically found that

Bristol could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. R. 412.

The ALJ gave Bristol the benefit of the doubt by using the more limited RFC assessment rendered by Dr. Perdomo in March 2006. There is no ambiguity in that assessment, and no basis in the record to suggest that the ALJ was confused by the later assessment. Accordingly, this assignment of error is not well-taken.

*Credibility.*

Bristol contends that the ALJ erred because she relied on boilerplate language to support the finding that Bristol was not completely credible. Under the pain standard in this Circuit, if an ALJ decides not to credit a claimant's subjective testimony about functional limitations arising from her impairments, the ALJ must articulate explicit and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (citations omitted). The articulated reasons must be based on substantial evidence in the record. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

The ALJ's decision reflects a thorough review of the evidence in the record. Among other things, the ALJ observed that Bristol could walk down hallways and sit without difficulty during examinations despite complaints of limitations in her ability to perform those activities. R. 27-28. The ALJ also correctly noted that the medical records consistently included recommendations that Bristol participate in exercise programs. R. 28. She observed that Bristol reported improvement in her symptoms of tiredness, fatigue and sleepiness after she began using a CPAP machine. R. 28-29. Additionally, the ALJ noted other indicia of lack of

credibility, including findings that psychological test results were invalid due to Bristol's poor effort. R. 30.

All of these findings are supported by substantial evidence in the record. Therefore, Bristol's argument that the ALJ did not properly assess her credibility is not meritorious.

*Hypothetical Questions to the VE.*

In this assignment of error, Bristol first contends that the hypothetical questions to the VE were inadequate because Dr. Perdomo found that she could sit, stand or walk, collectively, no more than 6 hours in an 8-hour workday. As discussed above, this argument is not well taken.

Bristol also argues that the ALJ erred by failing to ask the VE to assume that the hypothetical claimant had moderate limitations in concentration, persistence or pace. Moderate limitations in this area are an impairment that an ALJ has to translate into a functional limitation, which functional limitations must be supported by substantial evidence in the record.

For example, in *Dawson v. Commissioner of Social Security*, No. 6:11-cv-1128-Orl-31KRS, 2012 WL 1624267 (M.D. Fla. May 9, 2012), an ALJ found that the claimant, Dawson, had moderate difficulties in concentration, persistence or pace. The ALJ found sufficient medical evidence to suggest that, despite that limitation, Dawson could perform simple, routine tasks. The Court found that the "ALJ sufficiently accounted for these limitations by restricting the hypothetical to 'jobs involving simple, routine repetitive tasks with up to three-step commands.'" *Id.* at *3 (citing *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872 (11th Cir. 2011)).

NOT FOR PUBLICATION

In the present case, the ALJ concluded, based on opinions of psychologists in the record, that Bristol was capable of understanding, following and completing simple, routine, repetitive tasks despite moderate limitations in concentration, persistence or pace.  As discussed above, Dr. Eeltink opined that Bristol would be able to complete simple tasks on a continuing basis from a mental standpoint despite moderate limitations in concentration, persistence or pace.  R. 395.  This finding is also supported by the opinion of Dr. Bartlett, who found that Bristol could do simple and basic tasks at work or at home despite moderate limitations in understanding, concentration and persistence.   R. 443-45.  More recent treatment at Lakeside Behavioral Healthcare also shows that Bristol's memory and attention span were improved with medication.  R. 509.  Therefore, the ALJ articulated specific reasons supported by evidence in the record that were adequate to support her finding that Bristol could perform simple, routine repetitive tasks despite her mental impairments.

Bristol also makes an oblique argument that the limitation to simple, routine repetitive tasks was inconsistent with her complaints of falling asleep during the day due to sleep apnea.  Doc. No. 14 at 15.  Once again, however, the record is sufficient to support the ALJ's findings.   She noted that Bristol reported improvement in her symptoms of tiredness, fatigue and sleepiness when she started to use the CPAP machine.  R. 28-29.  Indeed, Bristol reported having a more regular sleep cycle, waking refreshed, and having no daytime sleepiness as of April 2010.  R. 469.  This report to Dr. Masood is in sharp contrast to Bristol's testimony at the ALJ's hearing in July 2010, in which she reported falling asleep at all times of the day without notice.  The ALJ was entitled to disregard this testimony as part of her credibility finding in light of the evidence of record that sleep apnea was not impairing

Bristol's functional ability to the extent that she would be likely to fall asleep at work occasionally.

For all of these reasons, the hypothetical questions to the VE contained all of the functional limitations that the ALJ found to exist.  *See Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 315 (11th Cir. 2007)("[A]dditional claimed impairments that were not supported by objective medical evidence did not need to be included in the hypothetical") (unpublished decision cited as persuasive authority).  Therefore, the last assignment of error is also unavailing.

## RECOMMENDATION.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.  It is further recommended that the Court direct the Clerk of Court to issue a judgment consistent with its final order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** this 20th day of June, 2013.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE